UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

LAUREN MCFALLS, individually, and on behalf of all others similarly situated and the Proposed Rule 23 Class,

    Plaintiff,

v.

Case No.: 2:23-cv-572-SPC-KCD

NCH HEALTHCARE SYSTEM, INC. and NAPLES COMMUNITY HOSPITAL, INC.,

    Defendants.
_____/

## ORDER

Before the Court is Plaintiff's Motion to Certify Class for Conditional Collective Certification and Issuance of Court-Approved Notice. (Doc. 53.)[1] Defendants have responded in opposition. (Doc. 58.) For the reasons stated below, the motion is granted in part and denied in part.

## I. Background

Plaintiff Lauren McFalls is a registered nurse. (Doc. 1 ¶ 65.) In May 2021, she accepted a position working for Defendants NCH Healthcare System, Inc. and Naples Community Hospital, Inc. (*Id.* ¶ 25.) McFalls also accepted a

---

[1] Unless otherwise indicated, all internal quotation marks, citations, and alterations have been omitted in this and later citations.

position in Defendants' Specialty Fellowship Program ("Fellowship Program"). (*Id.* ¶ 71.) In "consideration for the training" she would receive, McFalls agreed to work for Defendants for two years. (*Id.* ¶ 74.) And she agreed to "pay back the [Fellowship Program] fee of $5,000" if she did not complete her two-year commitment. (Doc. 1-2 at 2.)

McFalls left Defendants' employment after eleven months. (Doc. 1 ¶ 95.) In response, Defendants deducted $477.90 from her final paycheck and refused to pay out "35 hours of accrued paid time off in the amount of $897.91." (*Id.* ¶¶ 99-100.) Defendants then forwarded the outstanding balance of the Fellowship Program fee to a debt collector. (*Id.* ¶ 101.)

McFalls now sues Defendants under the Fair Labor Standards Act ("FLSA"). She claims the $5,000 training repayment agreement provision is a "trap" that prevents nurses in the program from leaving before completing their two-year commitments. (*Id.* ¶¶ 13, 15, 20, 61.) And the repayment provision violates the FLSA because nurses are not paid "the minimum wage free and clear." (*Id.* ¶ 116.) She also claims Defendants violated the FLSA when they withheld her wages and sought to recover the outstanding part of the program fee. (Doc. 53 at 2.)

According to McFalls, these allegations are not unique to her. Rather, each nurse who participated in Defendants' program agreed to pay the

2

$5,000.00 program fee if they did not stay for two years. And she believes there are other, similarly situated nurses who would join her FLSA claims.

That brings us to the current motion. McFalls seeks to conditionally certify a collective of plaintiffs who: "(1) were employed by Defendants during the period between July 31, 2020, until trial; (2) participated in Defendants' Specialty Fellowship Program; and (3) were subject to the Specialty Fellowship Program Employment Agreement." (*Id.* at 1.)

## II. Legal Standards

"The FLSA authorizes collective actions against employers accused of violating" its requirements. *Morgan v. Fam. Dollar Stores, Inc.*, 551 F.3d 1233, 1258 (11th Cir. 2008). "In the Eleventh Circuit, certification of an FLSA collective action proceeds in two stages: the conditional certification or notice stage and the decertification stage." *Johnsey v. BAL TK, LLC*, No. 2:18-CV-00643-MHH, 2019 WL 3997072, at *2 (N.D. Ala. Aug. 23, 2019). We are at the first stage.

For conditional certification, a court "must determine—usually based solely on the pleadings and any affidavits of record—whether notice of the action should be provided to possible class members." *Raffo v. OS Rest. Servs., LLC*, No. 8:22-CV-1999-TPB-CPT, 2023 WL 5279496, at *2 (M.D. Fla. Aug. 1, 2023). "In evaluating whether conditional certification is appropriate, this Court considers: (1) whether there are other employees who desire to opt-in,

3

and (2) whether these other employees are similarly situated to [the claimant] with respect to their job requirements and with regard to their pay provisions." *Poggi v. Humana at Home 1, Inc.*, No. 817CV1234T24JSS, 2017 WL 4877431, at *4 (M.D. Fla. Oct. 30, 2017).

McFalls bears the burden of showing there is a reasonable basis to believe both requirements are met. *Reese v. Fla. Bc Holdings, LLC*, No. 617CV1574ORL41GJK, 2018 WL 1863833, at *3 (M.D. Fla. Mar. 16, 2018). But this is a "fairly lenient standard." *O'Day v. Inv. at Lake Diamond, LLC*, No. 5:23-CV-59-GAP-PRL, 2023 WL 3456926, at *2 (M.D. Fla. Apr. 21, 2023). "Where discovery has not been completed, a motion to conditionally certify a collective action under the FLSA and send out court authorized notice is typically granted." *Grajeda v. Verified Moving Pros, LLC,* No. 0:22-CV-61471-WPD, 2022 WL 17987191, at *1 (S.D. Fla. Sept. 22, 2022).

### III. Discussion

**A. McFalls has Shown Other Employees Desire to Opt-In**

As mentioned, "[t]he first requirement for conditional certification is that Plaintiff demonstrate that other employees desire to opt-in." *Thomas v. Waste Pro USA, Inc.*, 360 F. Supp. 3d 1313, 1321 (M.D. Fla. Mar. 12, 2019). "Evidence of other employees who desire to opt in may be based on affidavits, consents to join the lawsuit, or expert evidence on the existence of other similarly-situated employees." *Id*.

4

Stephanie Kumetz, another nurse formerly employed by Defendants, has filed a notice of consent to join the lawsuit. (Doc. 52, Doc. 53-1.) In conjunction with McFalls' declaration that there are other similarly situated employees, this evidence is enough. Indeed, a number of "courts have conditionally certified collective actions with as few as one or two individuals expressing a desire to opt-in." *Raffo*, 2023 WL 5279496, at *3; *see also O'Day*, 2023 WL 3456926, at *4. McFalls has satisfied her "fairly lenient burden" to show other employees are interested in joining the suit.

**B. Substantially Similar**

Next, the Court must determine whether the proposed collective members are "similarly situated to [McFalls] with respect to their job requirements and with regard to their pay provisions." *Poggi*, 2017 WL 4877431, at *4. In making this assessment, courts commonly consider several factors:

> (1) whether the plaintiffs all held the same job title; (2) whether they worked in the same geographical location; (3) whether the alleged violations occurred during the same time period; (4) whether the plaintiffs were subjected to the same policies and practices, and whether these policies and practices were established in the same manner and by the same decision-maker; [and] (5) the extent to which the actions which constitute the violations claimed by plaintiffs are similar.

*Thomas*, 360 F. Supp. 3d at 1321-22.

5

McFalls bears the burden here, but again, the bar is not particularly high. *Calderone v. Scott*, 838 F.3d 1101, 1104 (11th Cir. 2016). At this stage, "opt-in plaintiffs need show only that their positions are similar, not identical, to the positions held by the putative class members." *Id*. And "variations in specific duties, job locations, working hours, or the availability of various defenses are examples of factual issues that are not considered at [the notice] stage." *Vondriska v. Premier Mortg. Funding, Inc.*, 564 F. Supp. 2d 1330, 1335 (M.D. Fla. 2007).

First, McFalls seeks to certify a collective of nurses currently and formerly employed by Defendants. (Doc. 1 ¶ 114.) Although the proposed collective would encompass nurses who worked in several departments (Doc. 53-3), they all participated in the Fellowship Program. Given the allegations underlying the FLSA claims, that is what matters. *Vondriska*, 564 F. Supp. 2d at 1335.

Second, McFalls alleges Defendants reside in Collier County and "a substantial part of the events or omissions giving rise to [her] claims occurred in this District." (Doc. 1 ¶ 44.) Defendants did not contest this factor and have admitted venue is proper in this Court. (Doc. 50 ¶ 45, Doc. 58.) Thus, while McFalls did not specifically allege the potential collective members trained and worked in the same geographic area, the Court is satisfied this factor is met.

6

Third, McFalls proposes certifying a collective of nurses employed "during the period between July 31, 2020, until trial[.]" (Doc. 53 at 1.) Because McFalls has alleged Defendants *willfully* violated the FLSA, a three-year statute of limitation applies. 29 U.S.C. § 255(a). When willful violations are alleged, "[c]ourts in this Circuit have consistently held a three-year window of alleged violations satisfies the factor." *Parham v. Key Fire Prot. Enterprises, LLC*, No. CV 119-180, 2020 WL 4734726, at *6 (S.D. Ga. Aug. 14, 2020). Thus, McFalls properly restricted the proposed collective to nurses employed within the statute of limitations period. *Espinoza v. Galardi S. Enterprises, Inc.*, No. 14-21244-CIV, 2014 WL 5410307, at *5 (S.D. Fla. Oct. 23, 2014).

But McFalls also wants to include nurses who will enter the program after the notice is issued. (Doc. 53 at 1.) That is impermissible. *See Mohamed v. Cogint, Inc.*, No. 18-80686-CIV, 2018 WL 6308710, at *4 (S.D. Fla. Aug. 28, 2018); *Alequin v. Darden Restaurants, Inc.*, No. 12-61742-CIV, 2013 WL 3939373, at *8 (S.D. Fla. July 12, 2013). The collective will need to be restricted to nurses employed within the three years preceding the date of mailing the notice. *See Simpkins v. Pulte Home Corp.*, No. 608-CV-130-ORL-19DAB, 2008 WL 3927275, at *9 n.9 (M.D. Fla. Aug. 21, 2008) ("Because the statute of limitations runs until the written opt-in notice is filed with the Court, 29 U.S.C. § 256, it is prudent to calculate the period from the latest date possible.").

7

Fourth, McFalls alleges the collective members encountered two policies and practices that violated the FLSA. The first was the requirement that each nurse entering the Fellowship Program sign the training repayment agreement provision. (Doc. 1 ¶ 116.) McFalls claims this policy contradicts the FLSA because it prevented the collective from receiving a minimum wage paid "free and clear." (*Id*.) The second was Defendants' practice of recouping $5,000 from nurses who did not complete their two-year employment commitment. (*Id*.) McFalls alleges this practice violated the FLSA because it meant those who left early received final paychecks below the minimum wage. (*Id*.) And she asserts each member of the proposed collective was "subject to [these] uniform policies and practices[.]" (*Id*. ¶ 115.)

Starting with McFalls' allegation that the nurses' wages were not paid "free and clear," in violation of the FLSA, Defendants admit each nurse who joined the program signed the training repayment agreement provision. (Doc. 50 ¶ 5.) And McFalls has provided the Court with a significant number of these signed agreements. (Doc. 53-3.) While Defendants contend the agreement provision does not violate the FLSA, (Doc. 58 at 2), that argument is premature. *Benvenutti v. GEICO Gen. Ins. Co.*, No. 5:22-CV-182 (MTT), 2023 WL 3098367, at *3 (M.D. Ga. Apr. 26, 2023). It is enough that McFalls has described a common policy requiring each nurse in the program to sign the training repayment agreement provision.

8

Turning to the allegation that Defendants withheld nurses' wages if they left the program early, Defendants argue certification is improper because the collective did not experience the same recuperation practices. (Doc. 53 at 8-9.) For example, Defendants point out that some potential members of the collective have satisfied their two-year commitment or were terminated and would not be subject to the repayment provision. (*Id.*) And others left early but their training fee was forgiven. (*Id.*) But factual variations like these are best left for another day. *Vondriska*, 564 F. Supp. 2d at 1335. Variations in enforcement can be addressed at the decertification stage. It is enough that McFalls has described a common practice of recuperating training fees from nurses who leave Defendants' employment before completing their two-year commitment. Thus, McFalls has met her lenient burden to show the collective members encountered the same policies and practices established by Defendants. *See, e.g.*, *Jackson v. Fed. Nat'l Mortg. Ass'n*, 181 F. Supp. 3d 1044, 1052 (N.D. Ga. 2016) ("The focus of the court's inquiry at this stage is not on whether there has been an actual violation of law, but on whether the proposed plaintiffs are similarly situated with respect to their allegations that the law has been violated.").

Finally, McFalls alleges each potential collective member experienced the same actions that violated the FLSA: they had to sign the training repayment agreement provision and faced collection of the $5,000 program fee

9

if they did not complete their two-year commitment. This satisfies McFalls' lenient burden. Again, variations in enforcement can be addressed at the decertification stage.

### C. The Proposed Notice

"When permitting a party to send a notice concerning a collective action, a trial court has a substantial interest in [the] communications that are mailed[.]" *Aiyekusibe v. Hertz Corp.*, No. 218CV816FTM38MRM, 2020 WL 1894502, at *5 (M.D. Fla. Jan. 28, 2020). "By monitoring the preparation and distribution of a notice, a court can ensure that it is timely, accurate, and informative." *Id*. "In general, notices to potential class members in FLSA cases should contain certain information." *Id*. And they "should not appear to be weighted in favor of one side or the other." *Metzler v. Med. Mgmt. Int'l, Inc.*, No. 8:19-CV-2289-T-33CPT, 2020 WL 1674310, at *6 (M.D. Fla. Mar. 4, 2020).

The parties agree on some revisions and disagree on others. The Court has also observed deficiencies that will need to be addressed. Starting with the Court's observations, the invitation to join the lawsuit must, as discussed above, be limited to nurses employed within the three years preceding the date of mailing the notice. *Mohamed*, 2018 WL 6308710, at *4; *Aiyekusibe*, 2020 WL 1894502, at *5.

Next, the notice does not inform potential collective members of their right to hire counsel of their choice. Rather, the notice suggests they have no choice but to hire McFalls' attorneys:

> If you choose to join this lawsuit, **your interests will be represented by** Plaintiff's counsel, Nichols Kaster, PLLP, Towards Justice, and Varnell & Warwick, P.A. **These attorneys will represent you** in the course of the lawsuit and all settlement discussions in connection with this lawsuit.

(Doc. 53-5 at 3 (emphasis added)). This is impermissible. *Hubbard v. Jerry's Seamless Guttering, Inc.*, No. 19-CIV-81705-RAR, 2020 WL 6038110, at *3 (S.D. Fla. Oct. 6, 2020); *Dean v. W. Aviation, LLC*, No. 17-CV-62282, 2018 WL 1083497, at *3 (S.D. Fla. Feb. 28, 2018). "Accordingly, the Notice shall include language informing all recipients that they have the right to consult with and retain their preferred counsel." *Dean*, 2018 WL 1083497, at *3.

Additionally, the header of the notice states the document is "Court authorized." (Doc. 53-5 at 2.) That is fine, but the Court must ensure potential members of the collective do not mistake the Court's authorization of the notice for approval of the lawsuit. Therefore, the parties must amend the header to explain that "[t]he Court has made no finding as to the merits of the case at this time." *Palma v. Metropcs Wireless, Inc.*, No. 8:13-CV-698-T-33MAP, 2014 WL 235478, at *1 (M.D. Fla. Jan. 22, 2014). This should be in addition to (not in lieu of) the later statement that "[t]he Court has not yet determined which party is correct." (Doc. 53-5 at 3.)

11

Turning to the revisions the parties agree on, the notice must be amended to "inform potential members of all obligations, including the possibility of responding to written requests, sitting for a deposition, or appearing at trial." *Moxley v. OS Rest. Servs., LLC*, No. 8:21-CV-1760-JLB-JSS, 2022 WL 3268289, at *2 (M.D. Fla. July 5, 2022); (Doc. 58 at 13-14, Doc. 62 at n.3). And the notice should be revised to "remove discussion of the FDUPTA and restrictive covenant claims, as well as ensure the paragraph describing NCH's position that employees were properly paid appears on the first page of the notice." (Doc. 58 at 14-15, Doc. 62 at n.3).

The parties disagree about whether the opt-in plaintiffs should have sixty or ninety days to join the lawsuit, be warned of potential liability for Defendants' attorneys' fees and costs, or provided a second notice if they do not respond to the first. Starting with how much time potential collective members may have to join the suit, McFalls cites *Isaacs* for the proposition that "courts . . . routinely grant ninety-day opt-in periods." (Doc. 62 at 7.) Defendants believe the window should be more limited. (Doc. 58 at 15-16.) Courts within this district "routinely permit potential plaintiffs to have at least sixty days to opt-in to a lawsuit[.]" *Raffo*, 2023 WL 5279496, at *3. McFalls has not provided the Court with any reason to believe sixty days would be insufficient here. (Doc. 62 at 7.) Thus, the notice should be revised to provide potential collective members sixty days to opt-in.

The Court also agrees with Defendants that the proposed notice should inform potential members they could be responsible for Defendants' attorneys' fees and costs. (Doc. 58 at 14.) "[N]otices to potential class members in FLSA cases . . . should include language regarding potential liability for costs and attorney's fees and appropriate definitions of the potential class." *Gibbs v. MLK Express Servs., LLC*, No. 218CV434FTM38MRM, 2020 WL 759917, at *2 (M.D. Fla. Jan. 30, 2020); *Aiyekusibe*, 2020 WL 1894502, at *5; *Aguirre-Molina v. Truscapes SW Fla Inc.*, No. 2:15-CV-608-FTM-38CM, 2016 WL 4472992, at *7 (M.D. Fla. Aug. 3, 2016).

Finally, the Court agrees with Defendants that McFalls' request to send potential collective members a second notice and opt-in form if they do not respond to the first is unjustified. *Moxley*, 2022 WL 3268289, at *2 ("[R]eminder or follow-up notices are unnecessary and will not be permitted.").

## IV. Conclusion

For the reasons stated, Plaintiff's Motion to Certify Class for Conditional Collective Certification and Issuance of Court-Approved Notice (Doc. 53) is **GRANTED IN PART AND DENIED IN PART**:

1. Conditional certification of the following collective definition is permitted:

Individuals who (1) were employed by Defendants within the three years preceding the date notice is sent; (2) participated in Defendants' Specialty

13

Fellowship Program; and (3) were subject to the Specialty Fellowship Program Employment Agreement.

2. The parties must confer and submit an amended proposed notice and consent form consistent with this Order by March 26, 2024. If the parties cannot agree on a proposed notice and consent form, they must submit individual proposals by the same date.

3. Upon approval of the final consent form and notice, the Court will set a further schedule for (1) Defendants to provide the names, last known mailing addresses, and last known email addresses of all employees who fall within the above collective definition; (2) McFalls to issue the notice; and (3) McFalls to file all consents to join with this Court.

4. McFalls' motion is denied to the extent it seeks any different relief than ordered above.

**ORDERED** in Fort Myers, Florida on March 13, 2024.

Kyle C. Dudek
United States Magistrate Judge

Copies:  All Parties of Record