UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

LAUREN MCFALLS, individually, and on behalf of all others similarly situated and the Proposed Rule 23 Class,

    Plaintiff,

v.

Case No.: 2:23-cv-572-SPC-KCD

NCH HEALTHCARE SYSTEM, INC. and NAPLES COMMUNITY HOSPITAL, INC.,

    Defendants.
_____/

## OPINION AND ORDER

Before the Court are Defendants' Motion for Judgment on the Pleadings (Doc. 51), Plaintiff's Response (Doc. 55), Defendants' Reply (Doc. 59), and Plaintiff's related Notice of Supplemental Authority (Doc. 65). For the below reasons, the Court grants the motion.

Plaintiff Lauren McFalls is an experienced nurse who applied for a position in the emergency department at Defendants' hospital. When Defendants offered her the job, they provided her three agreements—an offer of employment, a Specialty Fellowship Program agreement, and a sign-on bonus agreement. Plaintiff accepted the job offer and took the sign-on bonus.

And despite her prior ER experience, Plaintiff also opted to participate in Defendants' Specialty Fellowship Program.

According to Defendants, the fellowship program helps train nurses transitioning to a specialty practice area. The fellowship program agreement provided that Plaintiff would work at Defendants' hospital full-time for two years in exchange for her training. The catch—if Plaintiff left early, she would incur a $5,000 program fee.

Plaintiff left before her two-year commitment was completed. According to Plaintiff, the fellowship program is worthless. What's more, she is unhappy with the consequences of leaving before the two-year mark. After being contacted about the program fee, she decided that the best defense is a good offense. She sued the Defendants, claiming that the fellowship program violates the Fair Labor Standards Act (FLSA), among other state and federal provisions (Doc. 24).

Counts I and II of the Amended Complaint (Doc. 24) concern the FLSA. Plaintiff alleges that the program fee is an illegal kickback of wages and that Defendants did not pay her wages free and clear while the threat of the program fee loomed. Defendants move for judgment on the pleadings on those counts. Defendants argue in part that Plaintiff fails to state an FLSA claim because she voluntarily entered into the fellowship agreement.

The FLSA requires employers to pay their employees at least the minimum wage. 29 U.S.C. §§ 206, 216. And related regulations explain how those wages must be paid:

> Whether in cash or in facilities, "wages" cannot be considered to have been paid by the employer and received by the employee unless they are paid finally and unconditionally or "free and clear." The wage requirements of the Act will not be met where the employee "kicks-back" directly or indirectly to the employer or to another person for the employer's benefit the whole or part of the wage delivered to the employee. This is true whether the "kick-back" is made in cash or in other than cash.

29 C.F.R. § 531.35. So employers cannot get around the FLSA by requiring employees to incur their business expenses as a kickback. Plaintiff argues that Defendant's fellowship program operates in this way. It does not.

To succeed on her FLSA kickback claim Plaintiff "must prove that any payments or expenses were '*required*' and for the employer's benefit." *Crittendon v. Int'l Follies, Inc.*, No. 1:18-CV-02185-ELR, 2021 WL 9274510, at *14 (N.D. Ga. July 7, 2021) (emphasis added). The regulation Plaintiff relies on gives an example of a prohibited kickback. And the regulation repeatedly references the required nature of the kickback:

> *[I]f it is a requirement* of the employer that the employee *must* provide tools of the trade which will be used in or are *specifically required* for the performance of the employer's particular work, there would be a violation of the Act in any workweek when the cost of such tools purchased by the employee cuts into the minimum or overtime wages required to be paid him under the Act.

3

29 C.F.R. § 531.35 (emphasis added). Similarly, Courts have held that employers' training program arrangements concern "repayment of a voluntarily accepted loan, not a kick-back." *Gordon v. City of Oakland*, 627 F.3d 1092, 1096 (9th Cir. 2010).

Neither Defendants nor the demands of Plaintiff's job required her to participate in the fellowship program, so she fails to state a kickback claim. Reading the amended complaint in the light most favorable to Plaintiff, Defendants did not require her to participate in the fellowship program. In her own allegations, Plaintiff states that in 2019, "49 of the 331 nurses that Defendants hired participated in the purported fellowship." (Doc. 24 ¶ 51). That means 282 nurses did not. This does not bode well for Plaintiff's argument that she was required to participate in the program.

Plaintiff also alleges that Defendants require "newer nurses" and "applicants without experience in the relevant specialty practice area" to participate. (Doc. 24 ¶ 48). But Plaintiff is neither new to nursing nor new to the emergency department. As she puts it, "[w]hile the purported fellowship was typically for nurses transitioning into a new specialty area, Ms. McFalls already had experience working in Emergency Room Departments." (Doc. 24 ¶ 71). Plaintiff is not the type of nurse that Defendants require to participate in the fellowship program.

4

Plaintiff further alleges she received "strong suggestions" and "recommendations" that she participate and that she "did not feel like she could say no without looking bad to her new potential employer[.]" (Doc. 24 ¶¶ 70, 74). Defendants provided three agreements to Plaintiff when they offered her the job. The first agreement was an offer of employment with no strings attached. (Doc. 24 ¶ 76). The second agreement was the Specialty Fellowship Program agreement. (Doc. 24 ¶ 77). The third agreement was a sign-on bonus agreement. (Doc. 24 ¶ 78). Defendants gave her twenty-four hours to "*decide* whether to participate in the fellowship[.]" (Doc. 24 ¶ 73) (emphasis added). Plaintiff decided to participate in the Fellowship Program "thinking it could make her a better ER nurse." (Doc. 24 ¶ 74).

According to Plaintiff's amended complaint, Defendants offered her employment without participating in the fellowship program. She accepted the employment offer. Even though she had experience, she also decided to enter the fellowship program thinking it would make her a better ER nurse. Ultimately, she was disappointed with the fellowship program. And it was Defendants who urged Plaintiff to exit the fellowship program because she was already capable of practicing in the emergency department. When Plaintiff was unhappy with her job, she decided to leave before the two-year mark. The amended complaint paints a clear picture—Defendants never required Plaintiff to participate in the fellowship program. Given her experience,

5

participation was unnecessary in performing her job. A series of her own decisions, not the requirements of her employment, triggered the program fee.

Plaintiff argues that whether she was required to participate in the fellowship program is irrelevant (despite the language of the kickback regulation). In support, she relies on *Mayhue's Super Liquor Stores, Inc. v. Hodgson* for the proposition that the "'voluntary-involuntary' dichotomy is meaningless" where a plaintiff alleges that a debt to an employer violates the FLSA. 464 F.2d 1196, 1198 (5th Cir. 1972). But *Mayhue's Super Liquor Stores* doesn't say that much. That case involved an agreement that cashiers would cover cash register shortages by making "voluntary" repayments to their employer. *Id.* at 1197 (note the scare quotes). The court rejected the employer's argument that the repayments were voluntary and therefore not kickbacks and found that the repayments were involuntary. As the court observed, "the employer requires the execution of the [repayment] agreement as a condition of employment[.]" *Id.* at 1198. And the repayment agreement at issue included a provision that "shortages are considered to be a valid debt owed to the employer," undermining the argument that repayments were voluntary. *Id.* at 1199.

So far from finding voluntariness irrelevant, the court in *Mayhue's Liquor Stores* considered whether signing the repayment agreement was an involuntary condition of employment. The Court found that it was. The

6

opposite is true here. Defendants did not require Plaintiff to participate in the fellowship program as a condition of employment. Nor was it practically required to do the job. Defendants offered Plaintiff employment above the minimum wage, finally and unconditionally. And they separately gave her the decision to participate in the fellowship program. So *Mayhue's Super Liquor Stores* does not save Plaintiff's FLSA claims.

Plaintiff also cites several opinions for the proposition that "FLSA rights cannot be abridged by contract or otherwise waived[.]" (Doc. 55 at 17) (quoting *Barrentine v. Arkansas-Best Freight Sys., Inc.*, 450 U.S. 728, 740 (1981)).[1] But that's not what happened here. The parties did not agree that Plaintiff would be paid less than minimum wage. Plaintiff was offered and paid well above the minimum wage. She was free to spend her wages as she wished and decided to spend her wages on the fellowship program. And Defendants offered to front the program fee if she maintained full-time employment for two years. She may be unhappy with her bargain. But because the fellowship program

---

[1] Confusingly, Plaintiff also cites cases for the proposition that where an employer "suffers or permits" an employee to work the employer must pay the minimum wage. (Doc. 55 at 17). But it appears the "suffers or permits" standard goes to whether time spent by an employee counts as work time (in overtime cases). Under the relevant regulation, work should count as work time if "[t]he employer knows or has reason to believe that [the employee] is continuing to work and the time is working time." 29 C.F.R. § 785.11. This "knows or has reason to believe" language differs from the "requirement" language found in the kickback regulation. *See* 29 C.F.R. § 531.35.

7

was not a required condition of her employment, her wages were paid free and clear and without kickbacks.

One more matter is worth addressing. Plaintiff tries to create a fact dispute about whether she was paid the minimum wage. However, viewing the amended complaint and referenced documents in the light most favorable to her, it is not plausible that Defendants reduced her wages below the minimum wage to pay the program-fee debt.

Plaintiff references several documents in her amended complaint. She discusses her final two paychecks, a demand letter sent by Defendants, and collection letters sent by a debt collector. (Doc. 24 ¶¶ 105-10). Defendants argue these documents show they did not reduce her pay below the minimum wage to pay the program fee. (Doc. 51 at 6). In her opposition brief, Plaintiff claims that Defendants "misrepresent" the contents of these documents. (Doc. 55 at 9). Because these documents are central to Plaintiff's claims and she does not challenge their authenticity the Court may consider them at this stage. *See Horsley v. Feldt*, 304 F.3d 1125, 1134 (11th Cir. 2002).

Plaintiff's amended complaint describes two debts she potentially owes to Defendants—the $5,000 program fee and a $20,000 sign-on bonus.[2] She

---

[2] Along with the fellowship program agreement, Plaintiff also signed a sign-on bonus agreement. Under the agreement, she received a $20,000 sign-on bonus in exchange for agreeing to work full time for two years. Plaintiff does not rely on this agreement in her FLSA claims but argues that it is neither valid nor enforceable for lack of consideration. (Doc. 24 ¶ 78).

alleges that she received two paychecks with reductions. First, she received a paycheck that included a $477.90 reduction to offset part of her "debt." (Doc. 24 ¶ 105). Second, she received a paycheck for $0.00 because Defendants reduced all of her 35 hours of accrued paid time off in the amount of $897.91. (Doc. 24 ¶ 106). Plaintiff cites the first paycheck to allege that Defendants reduced her pay below minimum wage to offset her $5,000 program-fee debt. Other documents relied on by Plaintiff show this claim is implausible.

Defendants' demand letter is referenced in the amended complaint and is in the record. (Doc. 37-1). It states that Plaintiff received money for one or more "tuition reimbursement, relocation expense, sign on bonus, travel reimbursement, negative PTO in arrears, or a fellowship grant" and that those amounts totaled $25,000. (*Id.*). The letter states that Defendants have recovered $1,375.81 with an outstanding balance of $23,624.19. (*Id.*). Aside from the $1,375.81 taken from Plaintiff's paychecks, Plaintiff has paid none of the outstanding debt. (Doc. 24 ¶ 109). The demand says nothing about how the recovered funds were allocated between the debt from the sign-on bonus and the debt from the program fee, but another document does.

As mentioned above, Plaintiff also references debt collection letters in her amended complaint. Two of those letters are in the record. (Docs. 37-2, 37-3). The first letter describes a $20,000 debt to Defendants. (Doc. 37-3). It shows that Plaintiff paid or was credited $1,375.81 toward the debt. (*Id.*). The

9

second letter describes a $5,000 debt to Defendants. (Doc. 37-2). It shows Plaintiff had been charged $0.00 for the debt, charged $0.00 in fees, and paid or been credited $0.00 toward the debt. (*Id.*). The amounts of each debt correspond with Plaintiff's sign-on bonus ($20,000) and the program fee ($5,000). Only the former has been partially paid or credited. So the reduction from her paycheck did not go toward the program fee challenged here.

Regardless of the purpose of the reduction, Defendants paid Plaintiff minimum wage. Plaintiff's paycheck with the $477.90 reduction is in the record. (Doc. 55-1 at 2). It shows that after the reduction, and even after accounting for taxes, Defendants paid Plaintiff $1,520.41 for 62 hours of work. (*Id.*). That's over $24 an hour and well over the minimum wage.

Because neither Defendants nor the demands of Plaintiff's job required her to participate in the fellowship program, she fails to state an FLSA kickback claim. That's not to say her allegations could not support another cause of action or potential defenses. *See Bland v. Edward D. Jones & Co., L.P.*, 375 F. Supp. 3d 962, 978 (N.D. Ill. 2019) (describing similar allegations as "either potential defenses to the enforcement of the contract . . . or possible reasons to invalidate the contract as a matter of state law . . . not reasons to find that the [agreement] violates the FLSA."). But the Court will not consider these issues. Plaintiff invokes federal-question jurisdiction for her FLSA claims and supplemental jurisdiction over the rest of her state-law claims.

(Doc. 24 ¶¶ 43, 44). With the federal claims dismissed, the Court will decline its supplemental jurisdiction over the state-law claims. *See* 28 U.S.C. § 1367(c).

Accordingly, it is

**ORDERED**:

1. Defendants' Motion for Judgment on the Pleadings (Doc. 51) is **GRANTED**.

2. Counts I and II of the Amended Complaint (Doc. 24) are **DISMISSED with prejudice**.

3. The Court declines supplemental jurisdiction over the remaining state-law claims. Counts V and VII of the Amended Complaint (Doc. 24) are **DISMISSED without prejudice**.

4. The Clerk is **DIRECTED** to deny any pending motions as moot, terminate any deadlines, and close the case.

**DONE and ORDERED** in Fort Myers, Florida on April 19, 2024.

SHERI POLSTER CHAPPELL
UNITED STATES DISTRICT JUDGE

Copies: All parties of record